This is another situation where you have a plea to a state statute in Arizona, five counts I believe, of conspiring to commit money laundering under a stipulated value of under $10,000. The initial charge by the government was that was an aggravated felony. Then they added two other charges, one that it was an aggravated felony as drug trafficking, and third that it was a violation of a law relating to controlled substances. The court, without having a merit hearing on the matter, dismissed the first charge because by its very nature the agreement and the sentence of conviction, the five sentences of conviction which were concurrent, were to money laundering under $10,000. But the court, the immigration judge, decided to look again to the pre-sentence report, without having a merit hearing, and concluded after reading the pre-sentence report that the two other charges were sustainable. Again, money laundering is a statute in Arizona that's essentially an anti-racketeering statute, and it is divisible. It clearly points to several targets, including prostitution, money laundering itself, and other offenses. So it's again a divisible statute. The pre-sentence report relied on by the immigration judge, frankly, is simply a recitation of a compilation of police reports because it goes on to talk about an investigation. The immigration court below cites matter of Texaro for the proposition that police reports are not admissible, however, relies on what essentially is a hearsay recitation of a police report to determine that the other two charges are sustainable. The petitioner had no opportunity to respond to that because this was taken in connection with a motion to terminate, no indication that he was not going to have a merit hearing, but instead of having a merit hearing, simply decided the two charges in order, Mr. Lara deported. Again, this is a case involving Abreu-Reyes, it seems to me, but there are significant distinctions, it seems to me, between Abreu-Reyes, even if it has continued vitality or validity in this case. For one thing, in Abreu-Reyes, the issue which was deemed dispositive was the amount, the theft involved, or the amount of taxes defrauded. That was simply a number, a numerical calculation. And in the federal sentencing statute, and in the federal procedural history of the case, you get a draft pre-sentence report under Rule 32 of the Rules of Criminal Procedure. This was cited in Abreu-Reyes. You have the right to object to it, and then a determination was made. In the Arizona scheme of things, the pre-sentence report is delivered approximately three days prior to sentencing. It focuses on aggravating and mitigating factors. And the language of the pre-sentence report really has no direct or correlation or connection to the offenses to which the defendant pled or for which he was sentenced. A lot of the information relied on by the immigration judge was simply conclusory, and there are certainly no facts. And I think it points out the danger of using the pre-sentence report to determine whether a person is an aggravated felon under either the categorical approach or the modified categorical approach. In this case, frankly, this is simply a police report reclothed in a pre-sentence report written by a probation officer and then used by an immigration judge without the opportunity to respond to it, to call witnesses either in support, to cross-examine the writer, and then to conclude, based upon that, that my client is an aggravated felon. You didn't make any objection before the BIA of the lack of opportunity to respond to the report, right? I believe we raised that issue in front of the BIA. Is it in the ‑‑ It should be judged in the ‑‑ Is it addressed by the BIA? No, it's not. They just simply said it was permissible to use the pre-sentence report and determined that the immigration judge's order was sustainable. Where can we ‑‑ where in the record can we look to determine whether you ‑‑ if the BIA doesn't address it, whether that issue was raised before the board? I believe it's in the ‑‑ I believe, Your Honor, it's in the briefs submitted to the BIA arguing due process, arguing the failure of the court to hold a hearing. Arguing the due process violation by the failure of the immigration judge to hold a hearing or to warn defense counsel in any way that he was going to rule on the merits of the matter without a hearing. He simply issued a written order denying my motion to terminate and ordering deportation. But I believe we consistently raised the due process issue that we had no opportunity to appear at a hearing, to subpoena witnesses, or to refute the contentions and the accusations raised in the pre-sentence report, because really they had nothing to do with the offenses of conviction. Okay. You want to reserve the rest of your time for rebuttal? I do, Your Honor. Thank you. Good morning, Your Honors. May it please the Court, Pat, who stand you on behalf of the Respondent. Your Honors, we would ask this Court to dismiss this case for lack of jurisdiction because the board properly found the petitioner to be removable as an aggravated felon. The record contains substantial evidence that the petitioner was convicted of an offense related to both a controlled substance offense and a drug trafficking crime. And, Your Honor, we do believe that the board, the immigration judge, that it is correctly relied on the pre-sentencing report to find that the petitioner was involved in a racketeering scheme, which is an element, a required element for money laundering, a racketeering scheme that was related, clearly related to drug trafficking. The PRS is used here only for the very limited purpose of determining the nature of the criminal conviction, which was that it involved a drug trafficking scheme. The Court's decision, we believe, in Abreu Reyes is dispositive of this issue. As far as, let me just say at the outset, as far as the issue about the opportunity to be heard, we would point out to the Court that before the immigration judge, there was a briefing schedule established, and the petitioner was on clear notice of the opportunity to brief these issues. So I would point the Court to the administrative record at 139 and 140, where they agreed to a briefing schedule. Petitioner's attorney requested and received 30 days to respond to the government's brief, which was filed initially. In the government's brief, attached to the government's brief was the pre-sentencing report. The petitioner had the opportunity to attack the reliance on the pre-sentencing report before the immigration judge. I would also point out that. Say that again. Just repeat what you just said. Well, Your Honor, in the immigration proceedings, the administrative record at 139 to 140 establishes that a briefing schedule was set forth to decide this issue because it's a purely legal issue on the question of whether or not the petitioner was deportable or removable on the charge of offenses. And the government, in its submission, it went first, submitted a brief, which attached as an exhibit the pre-sentencing report and relied on that report. The petitioner then had 30 days to respond to that brief. Well, you know, the petitioner raises this issue in his brief. The first point in his argument is that petitioner was deprived of due process. Yes, Your Honor. The government's brief doesn't respond to that argument at all, does it? I believe the government's brief does in a footnote at the end of the brief, Your Honor, where we point. Footnote at the end of the brief? Yes, Your Honor, where we point out that what I have just indicated and the fact that there's no prejudice involved in that. I would also point out, Your Honor. So wait a minute. So your main argument is lack of prejudice? As to that due process claim, there was clear opportunity to raise the issue both before the immigration judge and before the Board of Immigration Appeals. In fact, the brief, if you look at the administrative record, the petitioner's brief before the board is attached at administrative record page 19 through 30. And he hardly raises this issue, Your Honor, except in the last page. What did you say? He hardly raises it? Well, I will quote the administrative record. He barely raises it. If you look on page 29 going into 30 of the administrative record, he says accordingly it is submitted that the allegations in the pre-sentence report in this case are indistinguishable from allegations contained in a police report and thus are not admissible under ACFR section 3.401. Because at the end of his brief, there's no argument section on it, and that's probably why the board didn't specifically address that issue. But I guess our point is that there was an opportunity for him to raise these issues below, and this involves a purely legal question. The petitioner has never submitted in his brief before this Court or in his briefs before the Board of Immigration Appeal what evidence he would have presented to contradict this issue, this question, that this was based on a drug offense. I mean ---- I look at his brief in page 23 of the excerpt. It's the third issue he raises. It's pretty squarely raised there. I'm going to go on this for a second. Yes, Your Honor. On Roman numeral 1, he raises the issue of general ---- No. Number 3, as you run down the web argument. What page is that, Your Honor? 23 of the excerpt of the record. Well, he cites it in his statement of issues, Your Honor, but he doesn't argue it in the body of the brief except at the last point. Well, maybe he doesn't argue it at any point, but it's certainly raised. This is the same issue. But even ---- You wouldn't miss it if you were doing it in the BIA opinion. Even assuming all that, that it was properly raised, he hasn't presented any evidence, factual evidence, if there was a hearing, what he would have submitted to contradict the presumption. You know, both you and the prior INS counsel make that point that, well, this is reliable because he didn't submit anything to contradict it. I don't think that's the correct allocation of the burden of proof in these cases. You must show that in this case you're trying to show two things, aggravated felony or a crime related to drug trafficking. And the only evidence at all that would indicate that the petitioner was involved in a drug-related crime is in the PSR. But Abreu makes that exact point, that there's no ---- I know. I realize that. And that goes ---- I don't know how you square that with what Huerta-Guevara said or with Corona-Sanchez or with the tension sided with Chang. I'm beginning to think that either there's a way to meaningfully distinguish these cases and maybe there is, in which case the question for you in this particular case is, what else in the record is there that would make this particular fact have an indicia of reliability that would distinguish it from some of the other cases? Well, in one sense, Your Honor, this case is different from, I believe, Corona-Sanchez. Corona-Sanchez just had the pre-sentencing report, as I understood from the case. This case has the judgment of conviction, which clearly establishes that the petitioner was convicted of money laundering. We know from the money laundering statute that an essential element of the money laundering crime is racketeering, so we know that racketeering ---- there had to be some racketeering involved. We then look to the pre-sentencing report for the very limited and narrow purpose of establishing what was it that he was racketeering in, and that's the sole issue. And where he has not ---- I think that's where he has not come back and contradicted that presumption. There is a presumption that he was trafficking in something or racketeering in something. That's clear from the statute. So we're just looking at the underlying facts to establish what it is, what was the nature of the offense. The other thing, Your Honors, I would point the Court to the pre-sentencing report. It's at excerpts of Record 74, I believe. But, I mean, the beginning of the pre-sentencing report indicates that this information, some of this documentation was presented to the pre-sentence investigator by the defendant through his counsel. So I'm not sure that the opposing counsel is correct in saying that this information is coming from police report. I'm not sure where that is coming from. Right. But that's the problem. We don't know where it's coming from. Well, it seems to indicate it's coming from the police. Well, how do we know? I mean, that's the problem with relying on the PSR. It's a report of usually at least federal PSRs or reports of probation officers who talk to a variety of people, get certain kinds of evidence. I've seen PSRs where they say they recite that there was a conviction with no backup whatsoever. I mean, how do we really know? That's where I think the analysis in Embryo Reyes comes in. They put forth a two-prong analysis. It's got to be probative. The pre-sentencing report must be probative. And then it must be not fundamentally unfair. I mean, they sort of lay that out there. And so there are those factors this Court cited to, one of which was that there are other documents. Here we do have a judgment of conviction, and that there are no other documents that contradict the pre-sentencing report. And I would say that in this case there's a further factor, that there's nothing in Petitioner's brief now, even now before the Court, where he could set forth something, at least an allegation that this was not a drug offense, but there's nothing in his brief that says it was not a drug offense. Right, but I still don't see how that squares with the language in Huerta-Guevara that enumerates what are the appropriate documents that would suffice to create a judicially noticeable fact that would support the aggravated felony finding. It has to be charging documents in combination with a signed plea agreement, jury instructions, guilty pleas, transcripts of a plea proceeding, and the judgment. I have some sympathy for you. I recognize that our cases aren't exactly consistent on this point. So I'm not sure I would read that. I'm quoting it. Right. But it does go on and say that we don't have to decide whether there the issue was relying on the brief. It says we don't have to decide whether the brief may ever be an acceptable source of evidence under the modified categorical approach. Because even if the facts are represented in Huerta's brief are taken as true account of what she did, it's not clear that these are the elements to which she pled guilty to. But what did Taylor say? I mean, Taylor had even a more limited list of documents upon which you could rely to judicially notice these facts. I'm not sure that it foreclosed completely. It was pretty strict. Anyway. We would ask the Court to distinguish the cases that Your Honors have cited on the basis that here there's just a very limited purpose for using the pre-sentencing court. Thank you. All right, Mr. Sander. Thank you. Rebuttal. In terms of the issue of objecting to a pre-sentence report or providing, refuting evidence, when the Court set forth a briefing schedule to determine my motion to terminate, he said this was a purely legal question. So I fully believed, counsel, fully believed that there was going to be a merit hearing. And the next thing I received was a document ordering my client deported. So in light of what the Court had said, the immigration judge had said to me on telephonic hearing, I thought it was a purely legal question, argued it in a purely legal fashion. Is that in the transcript of the? It is in the transcript of the hearing, Judge. All right. And that's why I didn't refute it, because I had no opportunity to refute it. Thank you. Okay. Thank you. We thank both counsel. This case also is submitted for decision.
judges: Noonan, Tashima, Wardlaw